**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FDIC as Receiver for Signature Bridge Bank,<br><br>Plaintiff,<br><br>- against -<br><br>CYNTHIA E. CONCORDIA and DREAM TO RISE LLC,<br><br>Defendants. | Civil Action No.:  1:23-cv-07222-VSVB<br><br>Hon. Vernon S. Broderick, USDJ |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. §12(b)(6)**

Dated:  September 26, 2023
        New York, New York

>                         James J. DeCristofaro, Esq.
>                         Jason R. Mischel, Esq.
>                         The Lawyer James
>                         462 Seventh Ave Fl 6
>                         New York, New York 10018
>                         Tel.  (212) 500-1891
>                         Fax  (917) 591-0289
>                         E-mail:james@dclfirm.com;
>                         jrm@jrmlegalresearch.com
>
>                         *Attorneys for Defendants*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT……………………………………………………….....  1

STATEMENT OF FACTS/PROCEDURAL HISTORY…………………………………………  2

ARGUMENT…………………………………………………………………………......  6

    I.    THE MOTION SHOULD BE GRANTED BECAUSE: (A) UNDER NEW YORK LAW DEFENDANTS RECEIVED THE $825,000.00 WIRE TRANSFER IN GOOD FAITH IN THE USUAL COURSE OF BUSINESS AND FOR VALUABLE CONSIDERATION AND (B) UNDER THIS COURT'S PRECEDENT, THE AMENDED COMPL. IS SUBJECT TO DISMISSAL BECAUSE IT CONTAINS NO FACTS ALLEGING THAT DEFENDANTS ACTUALLY PARTICIPATED IN ANY FRAUDULENT OR CONVERSION SCHEME UPON PLAINTIFF AND SIMPLY CONTAINS CONCLUSORY ALLEGATIONS THAT DEFENDANTS CONTROLLED THE ACCOUNT WHERE THE STOLEN FUNDS AT ISSUE IN THIS MATTER WERE RECEIVED……………………………………………………………………...  6

    II.    THE MOTION SHOULD BE GRANTED BECAUSE UNDER NEW YORK LAW THE FUNDS AT ISSUE CANNOT BE SPECIFICALLY IDENTIFIED……………………………………………………………………  12

    III.    THE MOTION SHOULD BE GRANTED BECAUSE UNDER NEW YORK LAW THE UNJUST ENRICHMENT CLAIM IS DUPLICATIVE OF THE CONVERSION CLAIM IF THE CONVERSION CLAIM SUCCEEDS, AND EVEN IF THE CONVERSION CLAIM FAILS, THE UNJUST ENRICHMENT CLAIM DOES NOT REMEDY THE DEFECT…………………………………...  14

CONCLUSION………………………………………………………………………...  15

# **TABLE OF AUTHORITIES**

### **Cases**

Aneless Corp. v. Woodward, 262 N.Y. 326, 329 (1993)………………………… 7, 12

Banque Worms v. BankAmerica Intl., 77 N.Y.2d 362, 372-373 (1991)…......... 7, 12

Corsello v. Verizon New York, Inc., 18 N.Y.3d 777 (2012)…………………….. 14

Family Health Mgt., LLC v. Rohan Devs., LLC,
207 A.D.3d 136 (1st Dept. 2022)……………………………………………... 13-14

Feldman v. Strulovitch,
2022 U.S. Dist. LEXIS 147552 (S.D.N.Y. August 17, 2022)…………………… 14

First Union Nat'l Bank v. A.G. Edwards & Sons, Inc.,
262 A.D.2d 106, 107 (1st Dept. 1999) …………………………………………. 7, 12

Georgia Malone & Co., Inc. v. Rieder, 19 N.Y.3d 511, 516 (2012)……………... 7, 12

Parsa v. State of New York, 64 N.Y.2d 143, 148 (1984)………………………… 7, 12

Roxx Alison Ltd. v. Shutle, Inc.,
2021 N.Y. Misc. LEXIS 5951 (Sup. Ct. N.Y. Cty) (Reed, J.)…………………… 14

Schottenstein v. Lee, 2023 U.S. Dist. LEXIS 116146 (S.D.N.Y. July 6, 2023)…. 7-8, 12-14

Securities & Exch. Commn. v. Lehman Bros., 157 F.3d 2 (1st Cir. 1998)………. 7, 12

Sh575b Holdings LLC v. Reliable Abstract Co.,
195 A.D.3d 429, 431 (1st Dept. 2021)……………………………................... 7, 12-14

### **Statutes**

Fed. R. Civ. P. §12(b)(6) ………………………………………………………... 1, 7, 12-14

Defendants Cynthia E. Concordia ("Concordia") and Dream to Rise LLC ("Dream") (collectively the "Defendants") respectfully submit this memorandum of law (the "MOL") in support of their Motion to Dismiss the Complaint (the "Motion") Pursuant to Fed. R. Civ. P. §12(b)(6).  The MOL is filed concurrently with the Affirmation of Jason R. Mischel, Esq. (the "Mischel Aff.") and the Affidavit of Concordia (the "Concordia Aff.").

## PRELIMINARY STATEMENT

The Court should grant the Motion for **three** (3) reasons.  **First**, the Court should dismiss the Amended Complaint ("the Amended Compl.," ECF 1-2, a true and correct copy of which is attached to the Mischel Aff. as Ex. A) because:  (i) under New York law a plaintiff bank defrauded by wrongdoers who invested the stolen money through third party defendants cannot recover the stolen money from the defendants who received such funds in good faith in the usual course of business and for valuable consideration; and (ii) under this Court's precedent, the Amended Compl. is subject to dismissal because it contains no facts alleging that Defendants actually participated in any fraudulent or conversion scheme upon Plaintiff and simply contains conclusory allegations that Defendants controlled the account where the stolen funds at issue in this matter were received.

**Second**, the Court should dismiss the Amended Compl. because under New York law in a claim for conversion with respect to money, the funds must be specifically identifiable, and the funds at issue in this matter cannot be specifically identified as they were deposited in an unsegregated account that became commingled with monies that were already in it.

**Third**, the Court should dismiss the cause of action for Unjust Enrichment in the Amended Compl. as duplicative of the cause of action for Conversion if the Conversion claim succeeds, or, if the Conversion fails, as an inadequate remedy to remedy the defect that they are both based upon the same set of facts.

## STATEMENT OF FACTS/PROCEDURAL HISTORY

1. In or around January 2019, an individual by the name of "Mason Brown Thutill" connected with Concordia on LinkedIn, who later: (i) represented to Concordia that his real name was Brian Haugen ("Brian"), a representative of an entity called "Blockchain" ("Blockchain"); (ii) represented to Concordia that she could earn money by allegedly investing in bitcoin; and (iii) provided Concordia with instructions to allegedly purchase the bitcoin by making payments to entities known as "Simplex" and "Paybis" (Concordia Aff.).

2. Between January 2019 and December 2020, Concordia, as consideration for the opportunity to earn money by investing in bitcoin, wired a total of $47,248.00 to "Simplex" and "Paybis" for what Concordia deemed to be an investment to Blockchain (the "Concordia Consideration," true and correct copies of bank statements representing the Concordia Consideration of which are attached to the Concordia Aff. as Ex. A).

3. On September 4, 2019, Concordia received confirmation from Blockchain by email (the "9/4/19 Blockchain Email," a true and correct copy of which is attached as Ex. B to the Concordia Aff.) that Blockchain received "$14,000.00" of the Concordia Consideration (Concordia Aff., Ex. B).

4. Upon information and belief, Brian rounded up the actual amount of $13,534.00 Concordia had actually wired to "Simplex" and "Paybis" to $14,000.00 in the 9/14/19 Blockchain Email (Concordia Aff.).

5. On September 30, 2020, Concordia, as the sole shareholder of Dream, registered Dream as a limited liability company in Virginia.

6. On or around March 30, 2021, Concordia received a Blockchain email (the "3/30/21 Blockchain Email," a true and correct copy of which is attached to the Concordia Aff. as

Ex. C) with a subject line "Level 9 Upgrade!" that referred Concordia to an individual calling himself "Annalist Sagor" ("Annalist") who represented himself as the Vice President of Blockchain and who would be in charge of transferring Concordia's return on her investment to her (Concordia Aff., Ex. C).

7. On April 30, 2021, at the direction of Brian and Annalist, Concordia: (i) opened an account at JPMorgan Chase Bank, N.A. ("Chase") in the name of Dream (the "Dream Chase Bank Account") in order for Concordia to be wired money to purchase bitcoin in exchange for the Concordia Consideration and (ii) immediately deposited $2,000.00 into the Dream Chase Bank Account (the "4/30/21 Dream Chase Bank Account Opening and Deposit," a true and correct copy of which is attached to the Concordia Aff. as Ex. D) (Concordia Aff., Ex. D).

8. On May 6, 2021, at the direction of Brian and Annalist, Concordia opened an account at Wells Fargo Bank ("Wells Fargo") in the name of Dream (the "Dream Wells Fargo Bank Account") after executing a business account application (the "Dream Wells Fargo Bank Account Business Account Application," a true and correct copy of which is attached to the Concordia Aff. as Ex. E) in order for Concordia to be wired money to purchase bitcoin in exchange for the Concordia Consideration (Concordia Aff., Ex. E).

9. After Brian requested that Concordia add $15,000.00 to the Concordia Consideration, Concordia requested that an official letter be provided by Blockchain that would confirm her investments were legal and valid (Concordia Aff.).

10. On June 1, 2021, Brian sent an email to Concordia with a purported official letter from Blockchain (the "6/1/21 Blockchain Email and Confirmation Letter," a true and correct copy of which is attached to the Concordia Aff. as Ex. F) that: (i) was allegedly signed by a "Peter

3

Smith" as the "CEO and Co-Founder" of Blockchain; and (ii) confirmed to Concordia that her investments were legal and valid (Concordia Aff., Ex. F).

11. On June 1, 2021: (i) Concordia, in a text to Annalist and in reference to the Dream Chase Bank Account, the Dream Wells Fargo Account and Concordia's bitcoin investments including the Concordia Consideration, stated "Please assure me that nothing bad is going to happen to me and my investments. Okay?"; and (b) Annalist replied to Concordia in a text stating "I promise you Cynthia and I can guarantee you" (the "6/1/21 Text Chain," a true and correct copy of which is attached to the Concordia Aff. as Ex. G) (Concordia Aff., Ex. G).

12. On or around June 11, 2021, Concordia, in exchange for the Concordia Consideration, received a wire transfer in the Dream Chase Bank Account in the amount of $825,000.00 (the "$825,000.00 Wire Transfer"), which Brian and Annalist stated was a transfer from Blockchain (Concordia Aff.).

13. At the time of the $825,000.00 Wire Transfer, the Dream Chase Bank Account contained a balance of other monies (Concordia Aff.; Mischel Aff., Ex. B).

14. On June 13, 2021: (i) Concordia, in a text to Annalist and in reference to the Dream Chase Bank Account, the Dream Wells Fargo Account and Concordia's bitcoin investments, including the Concordia Consideration, stated "Is this valid and legal?"; and (ii) Annalist, in reply, sent Concordia a text that stated "Yes it is" (the "6/13/21 Text Chain," a true and correct copy of which is attached to the Concordia Aff. as Ex. H) (Concordia Aff., Ex. H).

15. On or around June 14, 2021, Concordia was instructed by Brian: (i) to execute a cashier's check on the Dream Chase Bank Account in the amount of $380,000.00 (the "$380,000.00 Cashier's Check") and deposit it in the Dream Wells Fargo Account; (ii) to open a personal account at Wells Fargo (the "Concordia Wells Fargo Account"); (iii) to transfer

4

$374,000.00 from the Dream Wells Fargo Account to the Concordia Wells Fargo Account; and (iv) to wire transfer $369,000.00 from the Concordia Wells Fargo Account to an entity called "Binance a/k/a Prime Trust LLC" ("Prime Trust LLC") (the "$369,000.00 Wire Transfer"), all of which so that Concordia could then purchase bitcoin in the amount of $365,000.00 using a "Blockchain Wallet ID" (Concordia Aff.).

16. On June 14, 2021, Concordia: (i) executed the $380,000.00 Cashier's Check on the Dream Chase Bank Account; and (ii) deposited the $380,000.00 Cashier's Check in the Dream Wells Fargo Account (Concordia Aff.).

17. On June 23, 2021, Concordia transferred $374,000.00 from the Dream Wells Fargo Account to the Concordia Wells Fargo Account (Concordia Aff.).

18. On June 23, 2021: (i) Concordia, in texts to Annalist and in reference to the Concordia Chase Bank Account, the Concordia Wells Fargo Account and Concordia's bitcoin investments, stated: a) "Brian instructed me to transfer $369,000 to my Wells Fargo personal account. Then wire it to Binance"; and b) "Now trying to do wire transfer in the amount of $369k. There is a wire transfer fee of $30"; and (ii) Annalist, in reply, sent Concordia a text that stated "Proceed" (the "6/23/21 Text Chain," a true and correct copy of which is attached as to the Concordia Aff. as Ex. I) (Concordia Aff., Ex. I).

19. On June 23, 2021, Concordia transferred the $369,000.00 from the Concordia Wells Fargo Account to Prime Trust, LLC (Concordia Aff.).

20. On July 2, 2021, Chase Bank closed the Dream Chase Bank Account after, upon information and belief, returning the balance of $446,985.00 remaining in the Concordia Chase Bank Account to the sender (Concordia Aff.).

21. On July 27, 2021, Concordia met in person with Special Agent Josh Hulkel of the Federal Bureau of Investigation in relation to the $825,000.00 Wire Transfer whereby Concordia provided the contents of her cellphone (Concordia Aff.).

22. On February 8, 2022, Plaintiff filed the Amended Compl. in this matter alleging causes of action of unjust enrichment and conversion against Concordia and Dream for the balance of $378,015.00 (ECF 1-2, Mischel Aff., Ex. A).

23. The Amended Compl: (i) contains no facts alleging that Defendants actually participated in any fraudulent or conversion scheme upon Plaintiff; and (ii) simply contains conclusory allegations that Defendants controlled the account where the stolen funds at issue in this matter were received (ECF 1-2, Mischel Aff., Ex. A)

24. Concordia, pursuant to: (i) 6/1/21 Blockchain Email and Confirmation Letter; (ii) the 6/1/21 Text Chain; (iii) the 6/13/21 Text Chain; and (iv) the 6/23/21 Text Chain, believed that the $825,000.00 Wire Transfer, the execution of the $369,000.00 Cashier's Check from the Dream Chase Bank Account, the deposit of the $369,000.00 Cashier's Check in the Dream Wells Fargo Account and the $369,000.00 Wire Transfer were in good faith in the usual course of business and in exchange for the Concordia Consideration, and not a result of any fraudulent transfers (Concordia Aff.).

## ARGUMENT

I. **THE MOTION SHOULD BE GRANTED BECAUSE: (A) UNDER NEW YORK LAW DEFENDANTS RECEIVED THE $825,000.00 WIRE TRANSFER IN GOOD FAITH IN THE USUAL COURSE OF BUSINESS AND FOR VALUABLE CONSIDERATION AND (B) UNDER THIS COURT'S PRECEDENT, THE AMENDED COMPL. IS SUBJECT TO DISMISSAL BECAUSE IT CONTAINS NO FACTS ALLEGING THAT DEFENDANTS ACTUALLY PARTICIPATED IN ANY FRAUDULENT OR CONVERSION SCHEME UPON PLAINTIFF AND SIMPLY CONTAINS CONCLUSORY ALLEGATIONS THAT DEFENDANTS CONTROLLED**

### THE ACCOUNT WHERE THE STOLEN FUNDS AT ISSUE IN THIS MATTER WERE RECEIVED

Pursuant to Fed. R. Civ. P. §12(b)(6), a Complaint is subject to dismissal for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. §12(b)(6).

Under New York law, a plaintiff bank defrauded by wrongdoers who invested the stolen money through third party defendants cannot recover the stolen money from the defendants who received such funds in good faith in the usual course of business and for valuable consideration. First Union Nat'l Bank v. A.G. Edwards & Sons, Inc., 262 A.D.2d 106, 107 (1st Dept. 1999) [citing, *inter alia*, Banque Worms v. BankAmerica Intl., 77 N.Y.2d 362, 372-373 (1991), Aneless Corp. v. Woodward, 262 N.Y. 326, 329 (1993) and Securities & Exch. Commn. v. Lehman Bros., 157 F.3d 2, 6-7 (1st Cir. 1998) and granting defendants' motion to dismiss defrauded plaintiff bank's complaint by ruling that "the victim of a fraud cannot pursue the money taken from him by the wrongdoer into the hands of (defendants) who (have) received such funds in good faith in the usual course of business and for valuable consideration"]. See also Sh575b Holdings Llc v. Reliable Abstract Co., 195 A.D.3d 429, 431 (1st Dept. 2021) [citing Georgia Malone & Co., Inc. v. Rieder, 19 N.Y.3d 511, 516 (2012) and Parsa v. State of New York, 64 N.Y.2d 143, 148 (1984) and dismissing Plaintiff's claims for unjust enrichment and money had and received because "the moving defendants were also victims of (the wrongdoer's) scheme, and received their funds in good faith (so) it would not be against equity and good conscience to permit to retain them"].

Under this Court's precedent, a complaint is subject to dismissal when it contains no facts alleging that a defendant actually participated in any fraudulent or conversion scheme upon a plaintiff and simply contains conclusory allegations that a defendant controlled the account where stolen funds at issue were received. Schottenstein v. Lee, 2023 U.S. Dist. LEXIS 116146 at **5-6 (S.D.N.Y. July 6, 2023) (ruling plaintiff failed to state a claim for conversion against defendant

7

because the complaint "pleads no facts to suggest that (defendant) was involved in the alleged underlying conversions" and that the complaint "alleges…in conclusory terms, that (defendant) converted funds previously stolen from (plaintiff) (and) contains no facts explaining (defendant's) purported involvement in the alleged conversion scheme other than his control of an account that received stolen funds").

In this matter, as stated above:

(i) in or around January 2019, Brian connected with Concordia on LinkedIn and represented to Concordia: a) that he was a representative of Blockchain; b) Concordia could earn money by allegedly investing in bitcoin; and c) provided Concordia with instructions to allegedly purchase the bitcoin by making payments to entities known as "Simplex" and "Paybis" (Concordia Aff.);

(ii) between January 2019 and December 2020, Concordia, as consideration for the opportunity to earn money by investing in bitcoin, wired the Concordia Consideration to Blockchain (Concordia Aff., Ex. A);

(iii) on September 4, 2019, Concordia received the 9/4/19 Blockchain Email that stated that Blockchain received "$14,000.00" of the Concordia Consideration (Concordia Aff., Ex. B);

(iv) upon information and belief, Brian rounded up the actual amount of $13,534.00 Concordia had actually wired to "Simplex" and "Paybis" to $14,000.00 in the 9/14/19 Blockchain Email (Concordia Aff.);

(v) on or around March 30, 2021, Concordia received the 3/30/21 Blockchain Email with a subject line "Level 9 Upgrade!" that referred Concordia to Annalist who represented himself as the Vice President of Blockchain and who would be in

    charge of transferring Concordia's return on her investment to her (Concordia Aff., Ex. C);

(vi)  on April 30, 2021, at the direction of Brian and Annalist, Concordia: a) opened the Dream Chase Bank Account in order for Concordia to be wired money to purchase bitcoin in exchange for the Concordia Consideration and b) immediately deposited $2,000.00 into the Dream Chase Bank Account (Concordia Aff., Ex. D);

(vii)  on May 6, 2021, at the direction of Brian and Annalist, Concordia opened the Dream Wells Fargo Bank Account after executing the Dream Wells Fargo Bank Account Business Account Application in order for Concordia to be wired money to purchase bitcoin in exchange for the Concordia Consideration (Concordia Aff., Ex. E);

(viii)  after Brian requested that Concordia add $15,000.00 to the Concordia Consideration, Concordia requested that an official letter be provided by Blockchain that would confirm her investments were legal and valid (Concordia Aff.);

(ix)  on June 1, 2021, Brian sent the 6/1/21 Blockchain Email and Confirmation Letter that: a) was allegedly signed by a "Peter Smith" as the "CEO and Co-Founder" of Blockchain; and b) confirmed to Concordia that her investments were legal and valid (Concordia Aff., Ex. F);

(x)  on June 1, 2021: a) Concordia, in a text to Annalist and in reference to the Dream Chase Bank Account, the Dream Wells Fargo Account and Concordia's bitcoin investments including the Concordia Consideration, stated "Please assure me that nothing bad is going to happen to me and my investments. Okay?"; and b) Annalist

    replied to Concordia in a text stating "I promise you Cynthia and I can guarantee you" (Concordia Aff., Ex. G);

(xi)    on or around June 11, 2021, Concordia, in exchange for the Concordia Consideration, received the $825,000.00 Wire Transfer, which Brian and Annalist stated was a transfer from Blockchain (Concordia Aff.);

(xii)    at the time of the $825,000.00 Wire Transfer, the Dream Chase Bank Account contained a balance of other monies in the amount of $2,000.00 (Concordia Aff.);

(xiii)    on June 13, 2021: a) Concordia, in a text to Annalist and in reference to the Dream Chase Bank Account, the Dream Wells Fargo Account and Concordia's bitcoin investments, including the Concordia Consideration, stated "Is this valid and legal?"; and b) Annalist, in reply, sent Concordia a text that stated "Yes it is" (Concordia Aff., Ex. H);

(xiv)    on or around June 14, 2021, Concordia was instructed by Brian:  a) to execute the $380,000.00 Cashier's Check and deposit it in the Dream Wells Fargo Account; b) to open the Concordia Wells Fargo Account; c) to transfer $374,000.00 from the Dream Wells Fargo Account to the Concordia Wells Fargo Account; and d) to wire the $369,000.00 Wire Transfer, all of which so that Concordia could then purchase bitcoin in the amount of $365,000.00 using a "Blockchain Wallet ID" (Concordia Aff.);

(xv)    on June 14, 2021, Concordia:  a) executed the $380,000.00 Cashier's Check on the Dream Chase Bank Account; and b) deposited the $380,000.00 Cashier's Check in the Dream Wells Fargo Account (Concordia Aff.);

(xvi) on June 23, 2021, Concordia transferred $374,000.00 from the Dream Wells Fargo Account to the Concordia Wells Fargo Account (Concordia Aff.);

(xvii) on June 23, 2021: a) Concordia, in texts to Annalist and in reference to the Concordia Chase Bank Account, the Concordia Wells Fargo Account and Concordia's bitcoin investments, stated: i) "Brian instructed me to transfer $369,000 to my Wells Fargo personal account. Then wire it to Binance"; and ii) "Now trying to do wire transfer in the amount of $369k. There is a wire transfer fee of $30"; and b) Annalist, in reply, sent Concordia a text that stated "Proceed" (Concordia Aff., Ex. I);

(xviii) on June 23, 2021, Concordia transferred the $369,000.00 from the Concordia Wells Fargo Account to Prime Trust, LLC (Concordia Aff.);

(xix) on July 2, 2021, Chase Bank closed the Dream Chase Bank Account after, upon information and belief, returning the balance of $446,985.00 remaining in the Concordia Chase Bank Account to the sender (Concordia Aff.);

(xx) on July 27, 2021, Concordia met in person with Special Agent Josh Hulkel of the Federal Bureau of Investigation in relation to the $825,000.00 Wire Transfer whereby Concordia provided the contents of her cellphone (Concordia Aff.);

(xxi) on February 8, 2022, Plaintiff filed the Amended Compl. in this matter alleging causes of action of unjust enrichment and conversion against Concordia and Dream for the balance of $378,015.00 (ECF 1-2; Mischel Aff., Ex. A);

(xxii) the Amended Compl: a) contains no facts alleging that defendants actually participated in any fraudulent or conversion scheme upon Plaintiff; and b) simply

alleges that Defendants controlled the account where the stolen funds at issue in this matter were received (ECF 1-2; Mischel Aff., Ex. A); and

(xxiii) Concordia, pursuant to:  a) 6/1/21 Blockchain Email and Confirmation Letter; b) the 6/1/21 Text Chain; c) the 6/13/21 Text Chain; and d) the 6/23/21 Text Chain, believed that the $825,000.00 Wire Transfer, the execution of the $369,000.00 Cashier's Check from the Dream Chase Bank Account, the deposit of the $369,000.00 Cashier's Check in the Dream Wells Fargo Account and the $369,000.00 Wire Transfer were in good faith in the usual course of business and in exchange for the Concordia Consideration, and not a result of any fraudulent transfers (Concordia Aff.).

Thus, because:  (i) the documentary evidence clearly demonstrates that Plaintiff was defrauded by Brian, Annalist and Blockchain, who invested the stolen money through Concordia and Dream, Plaintiff cannot recover the stolen money from Concordia and Dream, who had received such funds in good faith in the usual course of business and for valuable consideration and (ii) the Amended Compl. a) contains no facts alleging that defendants actually participated in any fraudulent or conversion scheme upon Plaintiff; and b) simply alleges that Defendants controlled the account where the stolen funds at issue in this matter were received, the Motion should be granted and the Amended Compl. should be dismissed (Fed. R. Civ. P. §12(b)(6); First Union Nat'l Bank, supra; Banque Worms, supra; Aneless Corp., supra; Securities & Exch. Commn, supra; Sh575b Holdings Llc., supra; Georgia Malone, supra; Parsa, supra; ECF 1-2; Mischel Aff., Ex. A; Schottenstein, supra).

## II. THE MOTION SHOULD BE GRANTED BECAUSE UNDER NEW YORK LAW THE FUNDS AT ISSUE CANNOT BE SPECIFICALLY IDENTIFIED

As stated above, under New York law, a Complaint is subject to dismissal for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. §12(b)(6).

Under New York law, when a conversion claim is asserted with respect to money, the funds must be specifically identifiable, and if the funds became commingled in an unsegregated account with monies already in it, the conversion claim must fail.  Sh575 Holdings LLC, supra, 195 A.D.3d at 430 (dismissing a claim for conversion as the "Plaintiff failed to show that the funds at issue were specifically identifiable…(as) upon their transfer therein, became commingled with monies that were already in it, rendering them no longer specifically identifiable"); Schottenstein, supra, at **6-7, citing Family Health Mgt., LLC v. Rohan Devs., LLC, 207 A.D.3d 136 (1st Dept. 2022) (ruling stolen funds were not specifically identifiable as "(t)here is no allegation that the (stolen funds were) ever segregated in (defendant's account) through which it moved prior to the deposit in (defendant's account) or segregated in some fashion within (defendant's) account").

In this matter, as stated above:

(i) on April 30, 2021, at the direction of Brian and Annalist, Concordia:  a) opened the Dream Chase Bank Account in order for Concordia to be wired money to purchase bitcoin in exchange for the Concordia Consideration and b) immediately deposited $2,000.00 into the Dream Chase Bank Account (Concordia Aff., Ex. D); and

(ii) at the time of the $825,000.00 Wire Transfer, the Dream Chase Bank Account contained a balance of other monies in the amount of $2,000.00 (Concordia Aff.; Mischel Aff., Ex. B).

Thus, because the $825,000.00 in funds wired to the Dream Chase Bank Account became commingled in an unsegregated account with $2,000.00 of funds already in it, the conversion claim

13

must fail and the Motion should be granted [Fed. R. Civ. P. §12(b)(6); Sh575 Holdings LLC, supra; Schottenstein, supra; Family Health Mgt., LLC, supra].

### III. THE MOTION SHOULD BE GRANTED BECAUSE UNDER NEW YORK LAW THE UNJUST ENRICHMENT CLAIM IS DUPLICATIVE OF THE CONVERSION CLAIM IF THE CONVERSION CLAIM SUCCEEDS, AND EVEN IF THE CONVERSION CLAIM FAILS, THE UNJUST ENRICHMENT CLAIM DOES NOT REMEDY THE DEFECT

As stated above, under New York law, a Complaint is subject to dismissal for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. §12(b)(6).

Under New York law, claims for unjust enrichment that are based on the same facts as a claim for conversion are subject to dismissal as being duplicative of the conversion claim, regardless of whether the conversion claim fails. See Roxx Alison Ltd. v. Shutle, Inc., 2021 N.Y. Misc. LEXIS 5951 at *6-7 (Sup. Ct. N.Y. Cty) (Reed, J.), citing Corsello v. Verizon New York, Inc., 18 N.Y.3d 777 (2012) (dismissing Plaintiff's unjust enrichment claims as "based on the same facts as the conversion claims" and that "(t)o the extent the conversion claims succeed, the unjust enrichment claims are duplicative (and) (i)f the conversion claims fail, the unjust enrichment claim does not remedy the defect"); Feldman v. Strulovitch, 2022 U.S. Dist. LEXIS 147552 n. 5 at 16 (S.D.N.Y. August 17, 2022) (unjust enrichment claim is duplicative of conversion claim as "plaintiff have asserted a series of remedies based around one cause of action").

In this matter, the unjust enrichment claim and the conversion claim contained in the Amended Compl. are based on the same facts (Mischel Aff., Ex. A). Thus, because, under New York law, the unjust enrichment claim is duplicative of the conversion claim if the conversion claim succeeds, and even if the conversion claim fails, the unjust enrichment claim does not remedy the defect, the Motion should be granted [Fed. R. Civ. P. §12(b)(6); Roxx Alison Ltd., supra; Corsello, supra; Feldman, supra].

## **CONCLUSION**

For the foregoing reasons, the Court should grant the Motion and order such other and further relief as may be appropriate or necessary in favor of Defendants.

Dated:  September 26, 2023
      New York, New York

 

_____
Jason R. Mischel, Esq.
James J. DeCristofaro, Esq.
The Lawyer James
462 Seventh Ave Fl 6
New York, New York 10018
Tel.  (212) 500-1891
E-mail:  james@dclfirm.com
jrm@jrmlegalresearch.com

*Attorneys for Defendants*