CONTROLLED//FDIC BUSINESS

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

---

FDIC AS RECEIVER FOR SIGNATURE
BRIDGE BANK,

        Plaintiff,

  -against-

CYNTHIA E. CONCORDIA and DREAM TO RISE
LLC,

        Defendants.

---

Civil Action No.:  1:23-cv-07222-VSB

---

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. §12(b)(6)

---

David B. Grantz, Esq.
Catherine Pastrikos Kelly, Esq.
**MEYNER AND LANDIS LLP**
100 Park Avenue, 16th Floor
New York, New York 10017
(973) 602-3423
dgrantz@meyner.com
ckelly@meyner.com

New Jersey Address
One Gateway Center, Suite 2500
Newark, New Jersey 07102

*Attorneys for Plaintiff*
*FDIC as Receiver for Signature Bridge Bank*

CONTROLLED//FDIC BUSINESS

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF CONTENTS.................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................... ii

I.  PRELIMINARY STATEMENT ........................................................................1

II.  FACTS ALLEGED IN THE AMENDED COMPLAINT ..................................2

III.  ARGUMENT ......................................................................................................4

A.  The Court Should Exclude The Statements Defendants Submitted In The Concordia Affidavit And The Affirmation Of Defendants' Counsel Because They Are Not Alleged In The Amended Complaint .......................4

B.  The Motion to Dismiss Should Not Be Converted to A Motion For Summary Judgment ....................................................................................6

C.  The Court Should Reject Argument Sections I and II Of The Motion Because They Improperly Incorporate Statements Outside The Amended Complaint...................................................................................................8

D.  Plaintiff's Claims For Unjust Enrichment And Conversion Are Not Duplicative ...................................................................................................8

E.  Defendants Did Not Receive The Fraudulent Funds In Good Faith, In The Usual Course Of Business And For Valuable Consideration............10

F.  Defendants Were Part Of And Actively Participated In The Fraudulent Scheme, And Undoubtedly Transferred The Fraudulent Funds Into Accounts Unequivocally Controlled By Defendants.................15

G.  The Funds Can Be Specifically Identified ...................................................16

IV.  CONCLUSION.................................................................................................18

# TABLE OF AUTHORITIES

**Page**

## Cases

Ashcroft v. Iqbal,
   556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ............................................ 4

Badilla v. Midwest Air Traffic Control Serv., Inc.,
   8 F.4th 105, 124 (2d Cir. 2021) ................................................................................... 9

Brass v. American Film Techs., Inc.,
   987 F.2d 142 (2d Cir. 1993) ................................................................................... 4, 5

Chambers v. Time Warner, Inc.,
   282 F.3d 147 (2d Cir. 2002) ...................................................................................... 5

Chen v. Trs. of Columbia Univ. in City of New York,
   2001 WL 815521 (S.D.N.Y. July 18, 2001) ............................................................. 7

Cosmas v. Hassett,
   886 F.2d 8 (2d Cir. 1989) .......................................................................................... 5

FDIC v. Oldenburg,
   34 F.3d 1529 (10th Cir. 1994) .................................................................................. 9

First Union Nat'l Bank v. A.G. Edwards & Sons, Inc.,
   262 A.D.2d 106 (1st Dep't 1999) ................................................... 11, 12, 13, 14

Friedl v. City of New York,
   210 F.3d 79 (2d Cir. 2000) ........................................................................................ 7

Global Network Commc'ns, Inc. v. City of New York,
   458 F.3d 150 (2d Cir. 2006) ...................................................................................... 7

Goldemberg v. Johnson & Johnson Consumer Companies, Inc.,
   8 F. Supp. 3d 467 (S.D.N.Y. 2014) .......................................................................... 9

Hardford Life Ins. Co.,
   945 F. Supp. 2d 294 (E.D.N.Y. 2013) ...................................................................... 5

In re Actos End Payor Antitrust Litig.,
   13-CV-9244 RA 2015 WL 5610752, at *28 (S.D.N.Y. Sept. 22, 2015),
   *aff'd in part, vacated in part,* 848 F.3d 89 (2d Cir. 2017) ..................................... 9

In re San Luis & Rio Grande R.R., Inc. v. Brandt,
  1:23-CV-00016-CNS,2023 WL 6376713 (D. Colo. Sept. 29, 2023) ........................ 10

In re Wellbutrin XL Antitrust Litig.,
  260 F.R.D. 143 (E.D. Pa. 2009) ............................................................... 9

Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.,
  146 F.3d 66 (2d Cir. 1998) ..................................................................... 5

James X. Lynch C.O. v. Slayton,
  1997 WL 176396 (N.D.N.Y. April 11, 1997) ............................................... 4

Lenczycki v. Shearson Lehman Hutton,
  238 A.D.2d 248 (1st Dep't 1997) ......................................................... 16, 17

Majer v. Schmidt,
  169 A.D.2d 501 (1st Dep't 1991) ..................................................... 11, 13, 14

Melendez v City of New York,
  16 F.4th 992 (2d Cir 2021) .................................................................... 4

Mfrs. Hanover Trust Co.,
  160 A.D.2d 113 (1st Dep't 1990) ............................................................. 9

Neewra, Inc. v. Manakh Al Khaleej General Trading and Contracting Co.,
  2004 WL 1620874 ............................................................................. 5

O'Melveny & Myers v. FDIC,
  512 U.S. 79 (1994) ............................................................................ 9

Pokoik v. Gittens,
  171 A.D.2d 470 (1st Dep't 1991) ........................................................... 10

Robinson v. Wentzell,
  2019 WL 1207858 (D. Conn. March 14, 2019) ........................................... 5

Schottenstein v. Lee,
  2023 WL 4363002 (S.D.N.Y. July 6, 2023)............................................. 15, 16

SH575 Holdings LLC v. Reliable Abstract Co., LLC,
  195 A.D.3d 429 (1st Dep't 2021) ........................................................... 17

Shmueli v. Corcoran Grp.,
  9 Misc.3d 589 (Sup. Ct. NY County July 25, 2005) ..................................... 10

CONTROLLED//FDIC BUSINESS

Simonds v. Simonds,
   45 N.Y.2d 233 (1978) ........................................................................................................ 9

Simpson & Simpson, PLLC v. Lippes Mathias Wexler Friedman LLP,
   130 A.D. 3d 1543 (4th Dep't 2015) ................................................................................... 10

Thys v. Fortis Secs. LLC,
   74 A.D. 3d 546 (1st Dep't 2010) ....................................................................................... 16

Trebor Sportswear Co., Inc. v. The Limited Stores, Inc.,
   865 F.2d 506 (2d Cir. 1989) ............................................................................................... 8

**Statutes**

12 U.S.C. § 1819 ........................................................................................................................ 9
N.Y. U.C.C § 1-201 subd. 20 .................................................................................................... 11

**Rules**

Fed. R. Civ. P. 12(b)(6) ......................................................................................................... 4, 7
Fed. R. Evid. 201(b) .................................................................................................................. 5
Fed.R.Civ.P. 56 ......................................................................................................................... 7
Rule 12(b) .................................................................................................................................. 6

Plaintiff FDIC as Receiver for Signature Bridge Bank ("**Plaintiff**") submits this Brief in Opposition to Defendants Cynthia E. Concordia ("**Concordia**") and Dream to Rise LLC's ("**Dream to Rise**" and together, "**Defendants**") Motion to Dismiss the Amended Complaint pursuant to Fed. R. Civ. P. §12(b)(6) (the "**Motion**").

## I.     PRELIMINARY STATEMENT

Plaintiff seeks recovery of $378,015.00 (the "**Fraudulent Funds**") that Defendants fraudulently obtained, wrongfully held and transferred despite actual knowledge from both their bank statements and from communications with their bank, JP Morgan Chase Bank, N.A., that they received fraudulently obtained funds. Signature Bank's ("**Signature**") customer, non-party Sleepy Hollow Local Development Corporation ("**Sleepy Hollow**"), was the victim of a business email compromise, which ultimately resulted in the Fraudulent Funds being wired to Dream to Rise's bank account at JP Morgan Chase ("**Dream Chase Bank Account**"). After Dream to Rise received the Fraudulent Funds, Concordia, Dream to Rise's principal, orchestrated a series of transfers on behalf of herself individually and Dream to Rise. Defendants move to dismiss the Complaint against them, but Defendants' arguments have no merit.

*First*, Defendants moved under Rule 12(b)(6) and the Court cannot consider the additional statements Defendants submitted with this Motion, including the vast majority of facts in the Affidavit of Cynthia Concordia (the "**Concordia Affidavit**") and Exhibit B to the Affirmation of Jason Mischel ("**Defendants' Counsel's Affirmation**"), because Plaintiff did not include these facts in the Amended Complaint.

*Second,* if the Court does not exclude the statements in the Concordia Affidavit and Defendants' Counsel's Affirmation not included in the Amended Complaint when considering the

1

CONTROLLED//FDIC BUSINESS

Motion, the Court should nevertheless decline to convert this Motion into a motion for summary judgment because it is premature given Plaintiff has not conducted discovery.

*Third,* if the Court excludes the additional statements presented by the Concordia Affidavit and Defendants' Counsel's Affirmation, the Court should reject Argument Sections I and II of the Motion because they improperly incorporate matters not in the Amended Complaint.

*Fourth*, New York law provides that because Unjust Enrichment and Conversion have different elements, they can be pled at the same time.

*Fifth*, even if the Court does not reject Argument Section I of the Motion because it improperly incorporates statements not alleged in the Amended Complaint, the Motion should be denied because the Amended Complaint pleads sufficient facts alleging that Defendants had constructive notice that Defendants had not received the Fraudulent Funds in good faith in the usual course of business and for valuable consideration.

*Sixth,* the Amended Complaint sufficiently pleads specific allegations that Defendants participated in the fraud.

*Finally*, Defendants' bank account statements establish minimal, easily identifiable and segregated activity (not a commingling of funds) that would put an accountholder on notice to question the source or ownership of the Fraudulent Funds.

Accordingly, the Court should deny the Motion in its entirety.

## II.    FACTS ALLEGED IN THE AMENDED COMPLAINT

On or before June 11, 2021, Signature customer, non-party Sleepy Hollow, was the victim of a business email compromise, which resulted in fraudulent wire transfers totaling $2,270,326.50. First Amended Complaint at ¶ 5, attached to the Declaration of Catherine Pastrikos Kelly, Esq., dated October 24, 2023 ("**Kelly Decl.**"), as Exhibit A.

2

Of the $2,270,326.50 fraudulently transferred from Sleepy Hollow's account, $825,000 was deposited into the Dream Chase Account on June 11, 2021. *Id*. at ¶ 7.

Concordia opened, maintained and controlled the Dream Chase Account. *Id*. at ¶ 9.

On June 14, 2021, Signature notified Chase that Signature's client Sleepy Hollow was the victim of a business email compromise involving fraudulent wire transactions to Chase and requested that Chase immediately take appropriate action to ensure the Fraudulent Funds be preserved and returned to Signature. *Id*. at. ¶ 11-12.

On June 14, 2021, Concordia and Dream to Rise immediately withdrew $380,000 of the Fraudulent Funds in the Dream to Rise Chase Account to purchase a cashier's check, which Concordia then deposited in an account in Concordia's name at Wells Fargo Bank on the same day. *Id*. at ¶ 17.

Also on June 14, 2021, Concordia opened a checking account at Chase in her own name ("**Concordia Personal Chase Checking Account**"). *Id*. at ¶ 18.

Concordia withdrew $250,000 of the Fraudulent Funds in the Dream to Rise Chase Account and deposited the funds in the Concordia Personal Chase Checking Account. *Id*. at ¶ 19.

Of the $825,000 in Fraudulent Funds, Chase recovered $446,985.00 and returned the funds to Signature. *Id*. at ¶ 20.

On information and belief, on or about July 13, 2021, Chase spoke to Concordia and requested that Defendants return the remaining $378,015 in Fraudulent Funds. *Id*. at ¶ 21.

Defendants did not comply with Chase's request to return the remaining Fraudulent Funds. *Id*. at ¶ 22.

CONTROLLED//FDIC BUSINESS

## III.      <u>ARGUMENT</u>

**A.      The Court Should Exclude The Statements Defendants Submitted In The Concordia Affidavit And The Affirmation Of Defendants' Counsel Because They Are Not Alleged In The Amended Complaint.**

The Motion improperly relies on statements Defendants submitted in the Concordia Affidavit and the Affirmation of Defendants' Counsel. The Court should exclude the Affirmation of Defendants' Counsel and most statements in the Concordia Affidavit because Defendants submitted the statements outside the pleadings and Plaintiff did not allege any of these facts in the Amended Complaint.

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must "accept all factual allegations as true and draw all reasonable inferences in favor of the plaintiff." *Melendez v City of New York*, 16 F.4th 992, 1010 (2d Cir 2021). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). "A claim is sufficiently plausible to withstand a motion to dismiss when the factual content of the complaint allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

When deciding a Rule 12(b)(6) motion to dismiss, the Court must review the allegations in the *complaint only* and decide whether they state a claim for relief. *James X. Lynch C.O. v. Slayton*, 1997 WL 176396, at *1 (N.D.N.Y. April 11, 1997). The Second Circuit has ruled that only in certain circumstances will courts consider facts outside of the complaint. *Brass v. American Film Techs.*, *Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). Specifically, when a district court is resolving a 12(b)(6) motion, it may only consider facts outside of the complaint if: (1) a document is an exhibit to the complaint; (2) incorporated in the complaint by reference; (3) facts to which judicial notice

may be taken; or (4) documents plaintiff relied on in bringing suit. *Id*.; *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir. 2002).

The Second Circuit held that a document is not incorporated by reference into the complaint where "[t]he amended complaint merely discussed these documents and presented short quotations from them. [L]imited quotation does not constitute incorporation by reference." *Cosmas v. Hassett*, 886 F.2d 8, 13 (2d Cir. 1989) (internal citations and quotations omitted).

In addition, "[t]he Federal Rules of Evidence provide that courts may only take judicial notice of facts outside the trial record that are 'not subject to reasonable dispute.'" *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998) (quoting Fed. R. Evid. 201(b)). Such facts must either be "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Id*. "Because the effect of judicial notice is to deprive a party of the opportunity to use rebuttal evidence, cross-examination, and argument to attack contrary evidence, caution must be used in determining that a fact is beyond controversy under Rule 201(b)." *Id*. Courts do not take judicial notice of a defendant's affidavit providing their version of the facts of the case because its contents are *not* universally known and its accuracy *can* be questioned. *Ropalian v. Hardford Life Ins. Co*., 945 F. Supp. 2d 294, 361 (E.D.N.Y. 2013); *Robinson v. Wentzell*, 2019 WL 1207858, at *6 (D. Conn. March 14, 2019).

Here, Plaintiff did not plead any of the matters in the Affirmation of Defendants' Counsel and most statements in the Concordia Affidavit; Defendants have made no argument to the contrary.[1] Specifically, the only portions of the Concordia Affidavit alleged in the Amended

---

[1] In any event, Defendants' counsel does not have personal knowledge of the document he attaches as Exhibit B to Defendants' Counsel's Affirmation. Exhibit B is a copy of a JP Morgan Chase Bank statement for Dream to Rise's account. Defendants' counsel does not claim to be a signatory to that account and Exhibit B has not been produced in

Complaint are: (1) the portion of paragraph 8, which states Dream to Rise is registered as a limited liability company in Virginia; (2) the portion of paragraph 15, which states that on June 11, 2021 the Dream Chase Account received a wire of $825,000; and (3) the portion of paragraphs 17 and 18, which state that on June 14, 2021, Defendants used $380,000 of the Fraudulent Funds in the Dream to Rise Chase Account to purchase a cashier's check. Plaintiff included none of the other statements in the Concordia Affidavit in the Amended Complaint.

None of the documents attached to the Concordia Affidavit or the Affirmation of Defendants' Counsel are exhibits to the Amended Complaint. In addition, this Court should not take judicial notice of the statements in the Affirmation of Defendants' Counsel and the Concordia Affidavit because they are not universally known, and their accuracy can be questioned. Courts do not take judicial notice of a defendant's affidavit providing their version of the events. *Ropalian*, 945 F. Supp. 2d at 361. Further, Plaintiff incorporated none of the statements or documents from the Concordia Affidavit or Defendants' Counsel's Affirmation into the Amended Complaint by reference. Nor did Plaintiff have Defendants' statements or documents when drafting the pleadings and did not quote from any such documents. Plaintiff did not rely on these statements or documents when bringing suit against Defendants. Accordingly, the Court should exclude the statements included and exhibits attached to the Concordia Affidavit and the Affirmation of Defendants' Counsel not alleged or incorporated in the Amended Complaint.

**B.    The Motion to Dismiss Should Not Be Converted to A Motion For Summary Judgment.**

A district court does not have to convert a 12(b)(6) motion to one for summary judgment in every case in which a defendant seeks to rely on matters outside the complaint supporting a

---

discovery. *Neewra, Inc. v. Manakh Al Khaleej General Trading and Contracting Co.*, 2004 WL 1620874, at n. 3 (S.D.N.Y. July 20, 2004) (striking portions of an attorney's declaration not based on personal knowledge).

12(b)(6) motion; it may, at its discretion, exclude the extraneous material and construe the motion as one under Rule 12(b)(6). *Friedl v. City of New York*, 210 F.3d 79, 83-84 (2d Cir. 2000)("[W]hen matters outside the pleadings are presented in response to a 12(b)(6) motion," a district court must either "exclude the additional material and decide the motion on the complaint alone" or "convert the motion to one for summary judgment under Fed.R.Civ.P. 56 and afford all parties the opportunity to present supporting material."). If the district court converts the motion to dismiss into a motion for summary judgment, the court must advise the parties of its decision and allow the plaintiff to submit additional supporting materials. *Chen v. Trs. of Columbia Univ. in City of New York*, 2001 WL 815521, at *1 (S.D.N.Y. July 18, 2001) (converting the Rule 12(b)(6) motion to dismiss into a motion for summary judgment and ordering the parties to appear for a case management conference to submit additional materials to court).

   If the Court does not exclude the facts and exhibits attached to the Concordia Affidavit and the Affirmation of Defendants' Counsel as matters outside of the Amended Complaint, the Court must decide whether to convert the Motion to a motion for summary judgment. Under Rule 12(b) if matters outside the complaint are presented to and not excluded by the court in a motion to dismiss, the motion must be treated as one for summary judgment, and all parties must be given reasonable opportunity to present all material pertinent to a motion for summary judgment. *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006) (internal citations and quotations omitted). "[T]he conversion of a Rule 12(b)(6) motion into one for summary judgment under Rule 56 when the court considers matters outside the pleadings is strictly enforced and mandatory." *Id.*

   Here, if the Court does not exclude the facts and exhibits attached to the Concordia Affidavit and Defendants' Counsel's Affirmation as matters outside of the Amended Complaint,

the Court should decline to convert the Motion into a motion for summary judgment because Plaintiff has not had an opportunity to discover information essential to its claims and Defendants' defenses. Additionally, because Defendants have not filed an answer, Plaintiff does not know the full extent of Defendants' defenses to oppose a motion for summary judgment. Any motion for summary judgment at this stage is premature. *Trebor Sportswear Co., Inc. v. The Limited Stores, Inc.*, 865 F.2d 506, 511 (2d Cir. 1989) (holding that motions for summary judgment should be denied where the non-moving party has not had an opportunity to discover information essential to its opposition).

Accordingly, the Court should not convert the Motion into a motion for summary judgment. To the extent the Court does so we request the Court provide Plaintiff with an appropriate time to conduct discovery and submit additional materials to the Court.

**C.** **The Court Should Reject Argument Sections I and II Of The Motion Because They Improperly Incorporate Statements Outside The Amended Complaint.**

If the Court excludes the statements and exhibits attached to the Concordia Affidavit and Defendants' Counsel's Affirmation that are not alleged in the Amended Complaint, the Court should reject Argument Sections I and II of the Motion because the arguments cannot be sustained without factual support. Even if the Court did not exclude the statements and exhibits, the Court should still reject Arguments I and II because these arguments raise factual disputes with the allegations in the Amended Complaint and do not warrant a pre-answer dismissal based on law. Accordingly, the Court should deny the Motion as to Argument Sections I and II.

**D.** **Plaintiff's Claims For Unjust Enrichment And Conversion Are Not Duplicative.**

Defendants argue that Plaintiff's claim for unjust enrichment must be dismissed because it duplicates Plaintiff's conversion claim. Defendants' argument lacks merit because, under New

York law, the elements of a Conversion Claim differ from the elements of an Unjust Enrichment Claim.

Generally, federal law governs cases involving rights of the FDIC. 12 U.S.C. § 1819. *FDIC v. Oldenburg*, 34 F.3d 1529, 1538 (10th Cir. 1994). State law, however, is presumed adequate unless it conflicts with federal statutory provisions or "there is a 'significant conflict between some federal policy or interest and the use of state law.'" *O'Melveny & Myers v. FDIC*, 512 U.S. 79 (1994) (quoting *Wallis v. Pan Am. Petroleum Corp.*, 384 U.S. 63, 68, (1966)). The Supreme Court has held that federal common law should be created only in "few and restricted" cases when there is a significant conflict between a federal policy and the use of state law. *Id.* at 87. "[T]he Supreme Court has repeatedly 'underscore[d] the care federal courts should exercise before taking up an invitation to try their hand at common lawmaking.'" *Badilla v. Midwest Air Traffic Control Serv., Inc.*, 8 F.4th 105, 124 (2d Cir. 2021), *cert. denied*, 143 S. Ct. 2512 (2023).

"'[U]njust enrichment is not a catch-all claim existing within the narrow scope of federal common law,' but rather a state-specific remedy." *In re Actos End Payor Antitrust Litig.,* 13-CV-9244 RA, 2015 WL 5610752, at *28 (S.D.N.Y. Sept. 22, 2015), *aff'd in part, vacated in part,* 848 F.3d 89 (2d Cir. 2017) *quoting In re Wellbutrin XL Antitrust Litig.,* 260 F.R.D. 143, 167 (E.D. Pa. 2009). "The Court must therefore defer to the substantive state common law of those states' courts to determine whether relief is available." *Id. citing Goldemberg v. Johnson & Johnson Consumer Companies, Inc.,* 8 F. Supp. 3d 467, 484 (S.D.N.Y. 2014). Under New York law, unjust enrichment is an "obligation which the law creates, in the absence of any agreement, when and because the acts of the parties or others have placed in the possession of one person money ... under such circumstances that in equity and good conscience he ought not to retain it." *Mfrs. Hanover Trust Co.,* 160 A.D.2d 113, 117 (1st Dep't 1990). "Unjust enrichment, however, does not require the

performance of any wrongful act by the one enriched. Innocent parties may frequently be unjustly enriched." *Simonds v. Simonds,* 45 N.Y.2d 233, 242 (1978).

Whether there is a federal common law claim for conversion depends on the facts, such as the claim arising under a specific federal law or act. *Id.* If the claim does not arise from a specific federal law, then the courts apply state law. *In Re: San Luis & Rio Grande R.R., Inc. v. Brandt,* 1:23-CV-00016-CNS, 2023 WL 6376713, at *3 (D. Colo. Sept. 29, 2023).

Plaintiff's claims do not arise from a specific federal law. Under New York law, conversion is established when one who owns and has the right to possession of personal property proves that the property is in the unauthorized possession of another who has acted to exclude the rights of the owner. *Shmueli v. Corcoran Grp.*, 9 Misc.3d 589, 591 (Sup. Ct. NY County July 25, 2005).

"Although the equitable cause of action for unjust enrichment is closely related to the cause of action for conversion based on wrongful detention of property after demand for its return by the rightful owner, it is nevertheless a separate cause of action from the cause of action for conversion" and can be pled simultaneously. *Simpson & Simpson, PLLC v. Lippes Mathias Wexler Friedman LLP,* 130 A.D. 3d 1543, 1546 (4th Dep't 2015); *see also Pokoik v. Gittens,* 171 A.D.2d 470, 471 (1st Dep't 1991) (upholding both conversion and unjust enrichment claims).

Defendants cite non-binding authority from the lower courts and argue in general fashion that Plaintiff's claims for unjust enrichment and conversion are duplicative. Those cases, however, are contrary to New York law establishing that conversion and unjust enrichment are distinct causes of action that can be asserted simultaneously. Accordingly, the Motion should be denied.

**E.    Defendants Did Not Receive The Fraudulent Funds In Good Faith, In The Usual Course Of Business And For Valuable Consideration.**

Defendants argue that the Court should grant the Motion because Defendants received the Fraudulent Funds in good faith, in the usual course of business and for valuable consideration.

Even if the Court does not reject this argument because it improperly incorporates statements outside the Amended Complaint, the Court should nevertheless reject this argument because the Amended Complaint properly alleges that Defendants did not receive the Fraudulent Funds in good faith, in the usual course of business and for valuable consideration.

Under New York law, "the victim of a fraud cannot pursue the money taken from him by the wrongdoer into the hands of a third person, who has received such funds '**in good faith in the usual course of business and for valuable consideration**[.]'" *See First Union Nat'l Bank v. A.G. Edwards & Sons, Inc.*, 262 A.D.2d 106, 107 (1st Dep't 1999) (emphasis added). Good faith under the New York Uniform Commercial Code is defined as "honesty in fact in the conduct or transaction concerned." *See* N.Y. U.C.C § 1-201 subd. 20.

If an owner of property has been defrauded and seeks to set aside a subsequent transfer, constructive notice of the fraud will prevent the transferee from claiming that he or she is a bona fide purchaser. *Majer v. Schmidt*, 169 A.D.2d 501, 503 (1st Dep't 1991). A person has constructive notice of any fact which would have been disclosed by a reasonably diligent inquiry if circumstances indicate to a person of reasonable prudence and caution the necessity of inquiring to ascertain the facts and he or she avoids such inquiry. *Id.*

Here, Plaintiff sufficiently alleges that Defendants did not receive the Fraudulent Funds in good faith and in the ordinary course of business and had constructive notice of the fraud. Plaintiff alleges that Defendants had notice that the $825,000 wire received in the Dream Chase Account was from Sleepy Hollow's Signature Bank account. First Amended Complaint at ¶ 5, 7, Kelly Decl. at Exhibit A. In addition, Defendants engaged in a web of transactions immediately after receiving the Fraudulent Funds, by removing them from the Dream Chase Account before JP Morgan Chase's security department could freeze them. *Id.* at ¶ 17-19. Defendants continued to

move the Fraudulent Funds into newly opened accounts to stay ahead of Chase's investigation. *Id*. The receipt of these Fraudulent Funds, coupled with moving them from account to account would have immediately alerted any reasonable and prudent person to question the legitimacy and source of $825,000 wire transfer to the Dream Chase Account.

Specifically, Plaintiff alleges that on June 14, 2021, Defendants used $380,000 of the Fraudulent Funds to purchase a cashier's check, which Defendants deposited in an account at Concordia's name at Wells Fargo. *Id*. at ¶ 17. Also on June 14, 2021, as alleged in the Amended Complaint, Concordia opened Concordia's Personal Chase Checking Account. *Id*. at ¶ 18. Plaintiff alleges that Concordia then withdrew $250,000 of the Fraudulent Funds from the Dream to Rise Chase Account and deposited it in Concordia's Personal Chase Checking Account. *Id*. at ¶ 19. Any reasonable and prudent person would have questioned the source of the large deposit into her account; and transferring the funds through multiple transactions executed in this brief time frame after the deposit was made. The allegations in the Amended Complaint plead sufficient facts that Defendants had constructive notice of the fraud to meet the pleading requirements of Rule 12(b). Even if Defendants argue no constructive notice, the nature of the transactions, the amount of money involved and the need for multiple new accounts to be opened so the Fraudulent Funds could be transferred amply supports Plaintiff's allegations that Defendants knew, or should have known, enough to further investigate the activity taking place in their accounts and which they had orchestrated.

Further, Dream to Rise cannot be considered an entity engaged in regular business and, therefore, Defendants cannot be considered to have received the Fraudulent Funds in the ordinary course of business. Dream to Rise had no other ordinary business activity, other than to be a vehicle for Concordia to perpetuate fraud.

Defendants cite the distinguishable case of *First Union Nat'l Bank v. A.G. Edwards & Sons*, in which the appellate court held that the plaintiff could not recover allegedly fraudulently transferred funds from the defendant brokers who received the funds in the ordinary course of business from depositors where the facts did not give rise to an issue of subjective bad faith by the depositors and where the defendants would not have uncovered the fraud if they investigated it. *First Union Nat'l Bank v. A.G. Edwards & Sons, Inc*., 262 A.D.2d 106, 107 (1st Dep't 1999). There, the plaintiff bank was defrauded of $354 million by depositors who were not named as defendants. *Id.* After the fraud, the depositors invested the fraudulently obtained funds with the defendants. *Id*. The plaintiff sought to recover the funds of which they were defrauded from the defendants. *Id.* The court, however, ruled that the defendants received the funds "in good faith in the usual course of business and for valuable consideration" because there was no indication of bad faith by the defendants and had the defendants investigated, they would not have uncovered the fraud. *Id.* The appellate court affirmed the lower court's motion to dismiss the complaint. *Id*.

Not only is this case distinguishable because Concordia had constructive notice of the fraud, which she ignored, but Concordia had direct involvement and participated in the fraud using her bank accounts which she opened solely to engage in fraudulent conduct. Conversely, the *First Union* defendants were brokers who received money from fraudsters (who had committed the fraud outside of the *First Union* defendants' purview), and the *First Union* defendants had no reason to know or to investigate the source of the funds they received. The *First Union* defendants were in the business of receiving money to invest and could not be expected to investigate the source of the funds they received from each of their clients—that would be untenable for investment brokers.

13

In *Majer v. Schmidt*, the appellate court considered a similar issue. 169 A.D.2d 501, 503 (1st Dep't 1991). There, the court affirmed in part and reversed in part the lower court's ruling on defendant Sleigh's motion to dismiss. *Majer v. Schmidt*, 169 A.D.2d 501, 503 (1st Dep't 1991). Plaintiff alleged that Sleigh, a client of the dissolved law firm Schmidt, Aghayan & Saide, had constructive notice that the money Sleigh received was converted from the plaintiff, thereby establishing a lack of *bona fides*. *Id*. The plaintiff alleged Sleigh's constructive notice included that Schmidt, a named partner and Sleigh's main contact at the firm, committed numerous fraudulent and criminal acts, that Schmidt was in financial difficulty and that the information Schmidt gave Sleigh about the source of the money was patently false. *Id*. As a result, the court ruled that the plaintiff's allegations raised sufficient suspicion to compel Sleigh, a reasonable and prudent person, to question whether he had obtained the money legally. *Id*. The court determined the pleadings were legally sufficient to support a finding of constructive notice and lack of *bona fides* against Sleigh. *Id*.

Thus, Defendants are <u>not</u> like the defendants in *First Union Nat'l Bank v. A.G. Edwards & Sons*, who the court ruled had no evidence against them of bad faith and would not have uncovered the fraud associated with the funds they received if they investigated. Instead, Defendants are analogous to Sleigh in *Majer v. Schmidt* because Defendants had constructive notice of the fraud by virtue of their involvement in the fraudulent conduct, which prevents Defendants from claiming that they are a *bona fide* receiver of the Fraudulent Funds. A reasonable person in Concordia's situation would undeniably have found the circumstances to be suspicious and—at the very least— would have investigated further before continuing with the transactions. Thus, Plaintiff properly stated a claim and the Court should deny the Motion. The allegations in the Amended Complaint directly contradict Defendants' arguments, thus, at a minimum, giving rise to fact disputes that

should not be decided on a motion to dismiss at this stage, but after Defendants file their answer and the parties complete discovery. That is all that is required at this stage to allow the claims to move forward.

**F.     Defendants Were Part Of And Actively Participated In The Fraudulent Scheme, And Undoubtedly Transferred The Fraudulent Funds Into Accounts Unequivocally Controlled By Defendants.**

Defendants argue that the Amended Complaint may be dismissed because it does not allege that Defendants participated in the fraudulent conversion scheme, and simply contains conclusory allegations that Defendants controlled the accounts where the stolen Fraudulent Funds were deposited. The Court should reject this argument because the Amended Complaint properly alleges that Defendants actively participated in a fraud or conversion.

Specifically, Plaintiff alleged that Concordia not only received the Fraudulent Funds from Sleepy Hollow's Signature bank account into the Dream Chase Account, but Concordia, herself, executed a cashier's check on the Dream Chase Account, and orchestrated various transfers of the Fraudulent Funds to and from newly opened accounts held and controlled by Defendants. First Amended Complaint at ¶ 17-19, Kelly Decl. at Exhibit A.

Defendants cite *Schottenstein v. Lee,* 22CV1197 (DLC), 2023 WL 4363002, at *3 (S.D.N.Y. July 6, 2023) but that case is distinguishable. There, the court ruled that the plaintiff failed to state a claim for conversion against the defendant because the complaint failed to plead facts to suggest that the defendant was involved in the fraud and failed to explain the defendant's involvement in the fraudulent scheme, other than the defendant's control of the account that received the stolen funds. *Schottenstein v. Lee,* 22CV1197 (DLC), 2023 WL 4363002, at *3 (S.D.N.Y. July 6, 2023). Unlike *Schottenstein,* however, here, Plaintiff alleged how Concordia was specifically involved with the receipt of Fraudulent Funds into Defendants' accounts and

transferred the Fraudulent Funds in multiple transactions to their newly opened accounts. *Id*. at ¶ 7, 17-19.

In addition, in *Schottenstein*, the defendant was only alleged to have received the stolen funds into an account shared with another defendant. No claims were made that the defendant took any actions other than sharing the account that received the funds with the other, more involved defendant. Here, Plaintiff specifically alleged Defendants received the Fraudulent Funds into the Dream to Rise Chase Account and executed transactions between various other bank accounts owned by Defendants. *Id*. Accordingly, the Court should deny the Motion because the Amended Complaint properly alleges that Defendants participated in the fraudulent scheme and/or converted the Fraudulent Funds.

## G.     **The Funds Can Be Specifically Identified.**

Defendants argue that the Amended Complaint should be dismissed because the $825,000 wired to the Dream Chase Account cannot be identified because it was "comingled" with $2,000 that Concordia deposited in that account. This argument should be rejected because: (1) the fact that Concordia initially deposited $2,000 into the Dream Chase Account is a fact not in the Amended Complaint and should be excluded; and (2) the $825,000 wired to the Dream Chase Account can be specifically identified.

An action for conversion of money may be established "where there is a specific, identifiable fund and an obligation to return or otherwise treat in a particular manner the specific fund in question." *Thys v. Fortis Secs. LLC*, 74 A.D. 3d 546, 547 (1st Dep't 2010). "Although the action must be for recovery of a particular and definite sum of money, the specific bills need not be identified." *Id*. In addition, New York law holds that "the funds of a specific, named bank

16

account, such as the one here, are sufficiently identifiable." *Lenczycki v. Shearson Lehman Hutton*, 238 A.D.2d 248, 248 (1st Dep't 1997).

For example, in *Lenczycki v. Shearson Lehman Hutton*, the appellate court held that funds held in a joint bank account by plaintiff and his ex-wife were sufficiently identified and subject to a claim for conversion because they were held in a specific, named bank account. *See id*. Thus, the court held that to the extent that the ex-wife withdrew more than her own half interest in the account, she was subject to a claim of conversion by plaintiff. *See id.*

Here, even if the Court does not reject this argument because Concordia's initial $2,000 deposit into the Dream Chase Account is not an allegation in the Amended Complaint, the Fraudulent Funds are a definite sum of money and were held in a single, specific account controlled by Defendants. Plaintiffs allege that the account was only controlled by Defendants. Hence, the Fraudulent Funds are specifically identifiable under New York law.

Defendants cite *SH575 Holdings LLC v. Reliable Abstract Co., LLC*, 195 A.D.3d 429 (1st Dep't 2021) for the proposition that if funds are commingled with other money in an account, they are unidentifiable. However, even comingled funds in an account can be identifiable and, thus, this case is inapposite. In *SH575 Holdings LLC*, plaintiff attempted to collect, via a conversion claim, $1,000,000 from an attorney's IOLA escrow account where it was commingled with other clients' money bearing interest. *See SH575 Holdings LLC v. Reliable Abstract Co., LLC*, 195 A.D.3d 429, 430 (1st Dep't 2021). Additionally, funds were also transferred from the attorney's interest-bearing account to another account as part of a larger Ponzi scheme. *See id.* The court ruled that the $1,000,000 was not specifically identified because it was impossible to segregate. *See id.*

Unlike in *SH575 Holdings LLC*, the Fraudulent Funds here are readily identifiable. The Fraudulent Funds were deposited in the Dream Chase Account, an account only controlled by

CONTROLLED//FDIC BUSINESS

Defendants, where the only other money in the account was the initial deposit of $2,000. Thus, the Fraudulent Funds are easily identified and segregated from the $2,000 already in the Dream Chase Account. The commingling argument should be rejected by the Court and the Motion should be denied.

## IV.  **CONCLUSION**

For the reasons set forth above, Defendants' Motion should be denied in its entirety.

Dated:  October 24, 2023

By:  *Catherine Pastrikos Kelly*
David B. Grantz, Esq.
Catherine Pastrikos Kelly, Esq.
**MEYNER AND LANDIS LLP**
One Gateway Center, Suite 2500
Newark, New Jersey 07102
Telephone: (973) 602-3423
dgrantz@meyner.com
ckelly@meyner.com
*Attorneys for Plaintiff*
*FDIC as Receiver for Signature Bridge Bank*