UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X

FDIC AS RECEIVER FOR SIGNATURE
BRIDGE BANK.,

                Plaintiff,

   -v-                            No. 23-CV-7222-LTS-GWG

CYNTHIA E. CONCORDIA and DREAM TO
RISE LLC,

                Defendants.

----------------------------------------------------------X

## MEMORANDUM ORDER

        The Federal Deposit Insurance Corporation ("FDIC") in its capacity as receiver

for Signature Bridge Bank, N.A. ("FDIC as Receiver" or "Plaintiff") brings this action against

Cynthia E. Concordia ("Concordia") and Dream to Rise LLC ("Dream to Rise") (collectively,

"Defendants"), asserting claims for unjust enrichment and conversion.  The Court has

jurisdiction of this action pursuant to 12 U.S.C. section 1819(b)(2) and 28 U.S.C. section 1331.

        Before the Court is Defendants' motion (docket entry no. 18 (the "Motion")) to

dismiss the First Amended Complaint (docket entry no. 1-8 ("FAC")) pursuant to Federal Rule

of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.  The

Court has reviewed the parties' submissions thoroughly and, for the following reasons,

Defendants' Motion is denied in part and granted in part.

## BACKGROUND

        The following allegations are taken from the First Amended Complaint and are

presumed true for the purposes of this motion.

On or before June 11, 2021, a customer of Signature Bank, non-party Sleepy Hollow Local Development Corporation ("Sleepy Hollow"), was the victim of a business email compromise, resulting in fraudulent wire transfers out of Sleepy Hollow's account with Signature Bank in the amount of $2,270,326.50. (FAC ¶ 5.) Of this amount, $1,445,326.50 went to TD Bank, N.A. ("TD Bank"), and $825,000 went to JP Morgan Chase Bank, N.A. ("Chase"). (Id. ¶¶ 6-7.) On June 11, 2021, Chase accepted the $825,000 transfer for deposit into Dream to Rise's Chase account, which Concordia had opened on April 30, 2021, and has maintained and controlled since that date. (Id. ¶¶ 8-9.)

On June 14, 2021, Signature Bank identified the fraudulent transactions, and began taking measures to secure the return of the misappropriated funds, including notification and a request to Chase that it immediately take action to ensure that the misappropriated funds be preserved in order to be properly returned. (Id. ¶¶ 10-12.) Also on June 14, 2021, Concordia and Dream to Rise used $380,000 of the $825,000 initially transferred to purchase a cashier's check, which Concordia then deposited into an account in Concordia's name at Wells Fargo Bank. (Id. ¶ 17.) Concordia opened another checking account at Chase in her own name on the same date, June 14, 2021, withdrew another $250,000 of the $825,000 transferred, and deposited it into the newly opened personal checking account at Chase. (Id. ¶¶ 18-19.)

Chase worked to secure the misappropriated funds, but was only able to recover $446,985, which it returned to Signature Bank. (Id. ¶¶ 16, 20.) On or about July 13, 2021, Chase spoke to Concordia and requested that she return the remaining $378,015, but Concordia and Dream to Rise failed or refused to return the remaining misappropriated funds, and continue to hold this amount. (Id. ¶¶ 21-23, 27, 34-35.)

Signature Bank initiated this action in the Supreme Court of the State of New York, New York County on November 16, 2021.[1]  (Docket entry no. 1-6 ("Complaint").)  The operative FAC was filed on February 8, 2022, asserting claims for conversion and unjust enrichment against Defendants, and seeking recovery of the remaining $378,015 in funds.  (FAC at 4-6.)  On August 2, 2023, the FDIC as Receiver for Signature Bridge Bank was substituted as a plaintiff in place of Signature Bank.[2]  (Notice of Removal ¶ 11.)  Pursuant to 12 U.S.C. section 1819(b)(2)(B) and 28 U.S.C. section 1441(a), Plaintiff removed the action to this Court on August 15, 2023.  (See generally Notice of Removal.)  Defendants thereafter filed the pending Motion.

<u>DISCUSSION</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).  This requirement is satisfied when the factual content in the complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," id. (citation omitted), but a complaint that contains only "naked assertions" or "a formulaic recitation of the elements of a cause of action" does not suffice.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "In deciding a Rule 12(b)(6) motion, a court assumes the truth of the facts asserted in the complaint and draws all reasonable

---

[1]    Sleepy Hollow assigned any and all claims related to the fraudulent wire transfers to Signature Bank on January 26, 2022.  (See FAC at 8 ("Exhibit 1").)

[2]    Signature Bridge Bank, N.A. was organized by the FDIC in connection with the receivership of Signature Bank on March 12, 2023, pursuant to the provisions of 12 U.S.C. section 1821(n)(12), and most assets and liabilities of Signature Bank were transferred to Signature Bridge Bank.  (Docket entry no. 1 ("Notice of Removal") ¶¶ 2-3.)  On March 20, 2023, Signature Bridge Bank was closed by the Office of the Comptroller of the Currency, and also placed into receivership with the FDIC. (Id. ¶¶ 3-4.)

inferences from those facts in favor of the plaintiff." Sara Designs, Inc. v. A Classic Time Watch Co. Inc., 234 F. Supp. 3d 548, 554 (S.D.N.Y. 2017).

Consideration of Defendants' Exhibits

As an initial matter, Plaintiff argues that the Court should not consider the affirmation of Defendants' Counsel (docket entry no. 18-2 ("Mischel Affirmation")) or the affidavit of individual Defendant Cynthia E. Concordia (docket entry no. 18-5 ("Concordia Affidavit")) and exhibits appended thereto, to the extent these documents contain factual allegations that do not appear within the four corners of the FAC, in ruling on the Motion. (See docket entry no. 21 ("Pl. Mem.") at 4-6.) The Court agrees.

In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider (1) factual allegations in the relevant complaint, which are accepted as true; (2) documents attached to the complaint as an exhibit or incorporated in it by reference; (3) matters of which judicial notice may be taken; or (4) documents that are integral to the complaint. Brass v. American Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993); Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002). The bulk of Defendants' filings on the Motion consist of a counter-narrative of the factual allegations set forth in the FAC that do not fall into one of these categories of appropriately considered materials. (See, e.g., docket entry no. 18 ("Defs. Mem.") at 12 ("[T]he documentary evidence [submitted by Defendants] clearly demonstrates that Plaintiff was defrauded . . . . " (emphasis added)); docket entry no. 26 ("Reply Mem.") at 5 (arguing that the Motion should be dismissed in view of "the documentary evidence attached to . . . the Concordia Aff. . . . and the Mischel Aff.").)

Defendants contend in their reply briefing that it is appropriate to take judicial notice of both the Mischel Affirmation and Concordia Affidavit, which were initially filed in

state court, citing <u>Topalian v. Hartford Life Ins. Co.</u>, 945 F. Supp. 2d 294, 361 (E.D.N.Y. 2013) for the proposition that "a court may take judicial notice of a document filed in another court . . . to establish the fact of such litigation and related filings[.]"  (Reply Mem. at 6.)  Defendants are mistaken as to the purpose for which such filings might be taken into account, and the portion omitted from their quotation is key: "[A] court may take judicial notice of a document filed in another court <u>not for the truth of the matters asserted in the other litigation</u>, but rather to establish the fact of such litigation and related filings."  <u>Topalian</u>, 945 F. Supp. 2d at 361 (emphasis added) (citations and internal quotation marks omitted).  This standard is consistent with Rule 201(b) of the Federal Rules of Evidence, which provides that courts may take judicial notice of a fact "that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

In <u>Topalian</u>, the court ultimately rejected the plaintiff's attempts to have a disputed affidavit considered in connection with the parties' cross-motions for summary judgment.  945 F. Supp. 2d at 361.  The <u>Topalian</u> plaintiff had argued that the court could take judicial notice of the affidavit because it was a public document previously filed in a case before the United States District Court for the Middle District of Florida.  <u>Id.</u>  However, because the plaintiff "[did] not merely submit the [relevant affidavit] to establish the uncontroversial fact" that the document was filed in Middle District of Florida case, but rather "offered [the affidavit] for the truth of the matters asserted therein," the court found that the affidavit was not amenable to judicial notice.  <u>Id.</u>

Here, too, Defendants do not offer the Mischel Affirmation and Concordia Affidavit merely to establish that the documents were filed in New York Supreme Court prior to

this action's removal.  Rather, Defendants seek to have the facts therein considered in support of their Motion.  (Reply Mem. at 5 (arguing that the Motion should be dismissed in view of "the documentary evidence attached to the State Court Concordia Aff., the Concordia Aff., the State Court Mischel Aff. and the Mischel Aff.").)  Defendants do not argue, nor could they, that these facts are "not subject to reasonable dispute" and "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined" from reliable sources.  See FED. R. EVID. 201(b).  As in Topalian, the Court therefore finds that the Mischel Affirmation and Concordia Affidavit are not properly subject to judicial notice for the purposes for which they are offered.

   In short, while Defendants are free to pursue the defenses argued at length in their Memorandum and based upon their own factual allegations (Defs. Mem. at 6-14 (arguing, inter alia, that Defendants received the purportedly fraudulent funds "in good faith in the usual course of business and for valuable consideration" and that "the funds at issue cannot be specifically identified" because "the $825,000. . . became commingled in an unsegregated account with $2,000 . . . already in it")), a motion to dismiss for failure to state a claim is not the proper vehicle to do so.  Accordingly, to the extent they conflict with the FAC (see Pl. Mem. at 5-6 (identifying portions of Concordia Affidavit that appear in the FAC)), the Court declines to consider the Mischel Affirmation, Concordia Affidavit, and the factual arguments premised on these documents at this stage of litigation.

   The Court also declines Defendants' invitation to treat the Motion as one for summary judgment under Federal Rule of Procedure 56 (see Reply Mem. at 7-9) in light of the fact that discovery is ongoing.  (See docket entry nos. 35, 39); see also, e.g., Houlahan v. Raptor Trading Sys., Inc., No. 16-CV-9620-PGG, 2018 WL 3231662, at *5 (S.D.N.Y. Feb. 12, 2018)

(gathering case law for proposition that motions for summary judgment prior to discovery or in early stages of discovery are disfavored).

Sufficient Facts

Turning to the remaining arguments in Defendants' Motion, Defendants assert that the Motion should be dismissed because the FAC "contains no facts alleging that Defendants actually participated in any fraudulent or conversion scheme upon Plaintiff and simply contains conclusory allegations that Defendants controlled the account where the stolen funds at issue in this matter were received."  (Defs. Mem. at 6-12.)  This argument appears to be directed to the claim for conversion, asserted as the Second Cause of Action in the FAC.  (See id. at 7-8 (citing Schottenstein v. Lee, No. 22-CV-1197-DLC, 2023 WL 4363002 (S.D.N.Y. July 6, 2023) (reviewing motion for judgment on the pleadings of one-count claim of conversion)).)

Under New York law,[3] "'[c]onversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights.'"  Thyroff v. Nationwide Mut. Ins. Co., 460 F.3d 400, 403-404 (2d Cir. 2006) (citation omitted).  "New York law draws a distinction between a conversion claim where a person has wrongfully taken property and one where a person did not take the property but wrongfully retains [it]."  Newbro v. Freed, 409 F.Supp.2d 386, 402 (S.D.N.Y. 2006) (citation omitted).  "Where the original possession is lawful, a conversion does not occur until the defendant refuses to return the property after demand or until he sooner disposes of the

_____

[3]     This action is not brought pursuant to the Court's diversity jurisdiction; rather, jurisdiction is established under 12 U.S.C. section 1819(b)(2).  However, given that the claims asserted by Signature Bank, to which the FDIC succeeded, arose under New York law, the Court applies New York law in resolving the Motion.  See, e.g., Am. Nat'l Inc. Co. v. JP Morgan Chase & Co., 893 F. Supp. 2d 218, 229 (D.D.C. 2012) (citing Atherton v. FDIC, 519 U.S. 213, 218 (1997)); FDIC v. Oldenburg, 34 F.3d 1529, 1538 (10th Cir. 1994) (citing, inter alia, O'Melveny & Myers v. FDIC, 512 U.S. 79, 87 (1994)).

property." Schwartz v. Capital Liquidators, Inc., 984 F.2d 53, 54 (2d Cir. 1993) (citation

omitted).  In contrast, "where the defendant holds the property unlawfully—where, for example,

he stole the property—'no demand and refusal are necessary to render the defendant liable.'"

Leveraged Leasing Admin. Corp. v. PacifiCorp Capital, 87 F.3d 44, 49 (2d Cir. 1996) (citation

omitted).  To state a claim of conversion under the former theory of wrongful detention, the

plaintiff must allege that "(1) the party charged has acted without authorization, and (2)

exercised dominion or a right of ownership over property belonging to another, (3) the rightful

owner makes a demand for the property, and (4) the demand for the return is refused."  V&A

Collection, LLC v. Guzzini Props., 46 F.4th 127, 133 (2d Cir. 2022) (citations omitted).

Plaintiff argues that it has properly alleged Defendants' "actively participated in a

fraud or conversion,"[4] by alleging that "Concordia not only received the Fraudulent Funds from

Sleepy Hollow's Signature bank account into the Dream Chase Account, but Concordia, herself,

executed a cashier's check on the Dream Chase Account, and orchestrated various transfers of

the [$825,000] to and from newly opened accounts held and controlled by Defendants."  (Pl.

Mem. at 15.)  Plaintiff also asserts that the case cited by Defendants, Schottenstein v. Lee, is

distinguishable for these reasons.  (Id. at 15-16 ("[I]n Schottenstein, the defendant was only

alleged to have received the stolen funds into an account shared with another defendant").)  In

reply briefing, Defendants again contend that Schottenstein controls, arguing that the FAC

"contains no allegations that Defendants otherwise knew that they possessed the Plaintiff's

property."  (Reply Mem. at 16 (emphasis in original)).

---

[4]    The FAC does not assert a claim for fraud, and therefore the particularized pleading
requirements of Federal Rule of Civil Procedure 9(b) are inapplicable.  (See generally
FAC.)

Looking to the elements of a claim for conversion, the Court agrees that the Schottenstein case is distinguishable.  In Schottenstein, the court found that the plaintiffs had failed to state a claim for conversion where the operative complaint "contain[ed] no facts explaining [the relevant defendant's] purported involvement in the alleged conversion scheme other than his control of an account that received stolen funds."  Schottenstein, 2023 WL 4363002 at *3.  The Court further found that the proposed amended complaint contained "no allegations that plaintiffs made a demand for return of their money to [the defendant], or that [the defendant] otherwise knew that he wrongfully possessed the plaintiffs' property in [defendant's] jointly held account."  Id.  The Schottenstein plaintiffs had therefore failed to plead a claim for conversion based upon the defendant's alleged wrongful possession of the property, see Leveraged Leasing, 87 F.3d at 49-50, or under a theory of wrongful detention.

Here, by contrast, Plaintiff has alleged not only that Defendants received the funds at issue, but that, "[o]n information and belief, on or about July 13, 2021, Chase requested that Concordia and Dream to Rise return the remaining $378,015.00" of the $825,000 transferred.  (FAC ¶ 34; see also id. ¶ 21.)  Plaintiff also alleges that "Concordia and Dream to Rise . . . failed and/or refused to return the $378,015.00 to Chase."  (Id. ¶ 35; see also id. ¶¶ 22-23.)  Even assuming that Defendants' possession was initially lawful, Plaintiff's allegations that Defendants failed to return the misappropriated funds upon demand for their return are sufficient at this stage to state a cause of action for conversion under a theory of wrongful detention.  See Leveraged Leasing, 87 F.3d at 49 ("[O]ne in lawful possession shall not have such possession changed into an unlawful one until he 'be informed of the defect of his title and have an opportunity to deliver the property to the true owner [.]'" (citation omitted)).

The Motion is therefore denied as to the FAC's Second Cause of Action for conversion.

Duplicative Causes of Action

The final argument properly advanced in the Motion is that, under New York law, "claims for unjust enrichment that are based on the same facts as a claim for conversion are subject to dismissal as being duplicative of the conversion claim, regardless of whether the conversion claim fails," meaning that the FAC's First Cause of Action for unjust enrichment should be dismissed.  (Defs. Mem. at 14.)  Defendants cite case law that relies primarily on Corsello v. Verizon N.Y., Inc., 18 N.Y.3d 777 (N.Y. 2012), a case in which the New York Court of Appeals clarified that "unjust enrichment is not a catchall cause of action to be used when others fail."  Id. at 790; (Defs. Mem. at 14.)

In arguing that unjust enrichment is "'a separate cause of action from the cause of action for conversion' and can be pled simultaneously," Plaintiff cites a case from the Appellate Division of the Supreme Court of the State of New York that pre-dates Corsello, and an Appellate Division case that does not engage with Corsello's pronouncement that "[a]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim."  Corsello, 18 N.Y.3d at 790-91 (citations omitted); (Pl. Mem. at 10 (citations omitted).)  Moreover, Plaintiff does not argue that it has pleaded its unjust enrichment claim in the alternative.  See, e.g., In re Chantix Mktg., Sales Pracs. & Prods. Liab. Litig., Nos. 22-MD-3050-KPF, 22-MC-3050-KPF, 2024 WL 2784234, at *31 (S.D.N.Y. May 28, 2024) (explaining that, "[t]o validly plead an unjust enrichment claim in the alternative, . . . a plaintiff must demonstrate how she could 'succeed on her unjust enrichment claim and fail on her other claims'" (citations omitted)).

Both New York state courts and courts in this Circuit have, consistent with <u>Corsello</u>, dismissed unjust enrichment claims where the allegations supporting the claim are identical to those underpinning a conventional tort or contract claim asserted in the same pleading, including claims of conversion.  <u>See</u>, <u>e.g.</u>, <u>Advanced Knowledge Tech., LLC v. Fleitas</u>, No. 21-CV-992-PKC, 2021 WL 6126966, at *5 (S.D.N.Y. Dec. 28, 2021) (gathering case law in this Circuit for the proposition that, under New York law, "[a]n unjust enrichment claim that is indistinct from a contract or tort claim should be dismissed"); <u>Demirovic v. Ortega</u>, No. 15-CV-327-CLP, 2016 WL 11472745, at *5 (E.D.N.Y. Sept. 15, 2016) (dismissing counterclaim for unjust enrichment where allegations mirrored those of counterclaim for conversion and sought the same recovery).

As in those cases, the claims for unjust enrichment and conversion asserted in the FAC rely on the same factual allegations (<u>compare</u> FAC ¶¶ 26-28, <u>with</u> <u>id.</u> ¶¶ 31-35), and seek the same remedy of return of the remaining $378,015 in funds purportedly retained by Defendants (<u>compare</u> <u>id.</u> ¶¶ 29-30, <u>with</u> <u>id.</u> ¶ 36.)  Plaintiff also "fails to explain why the unjust enrichment claim is distinct" from the conversion claim.  <u>Fleitas</u>, 2021 WL 6126966, at *5; (<u>see</u> Pl. Mem. at 8-10.)

Accordingly, the First Cause of Action asserted in the FAC, unjust enrichment, must be dismissed as duplicative of the Second Cause of Action for conversion.

<u>CONCLUSION</u>

For the foregoing reasons, the Motion to Dismiss the First Amended Complaint is granted as to the First Cause of Action, unjust enrichment, but denied as to the Second Cause of Action, conversion.  This case remains referred to Judge Gorenstein for general pretrial management.

This Memorandum Order resolves docket entry no. 18.

SO ORDERED.

Dated: New York, New York
      September 30, 2024

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge